IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| William L. Ridenour and Tommy Lee Brown, | : | |
| | : | Civil Action 2:10-cv-00493 |
| Plaintiffs | : | Judge Economus |
| v. | : | Magistrate Judge Abel |
| Ohio Department of Rehabilitation and Correction, *et al.*, | : | |
| Defendants | | |

# Report and Recommendation

Plaintiffs William L. Ridenour and Tommy Lee Brown, state prisoners at the Chillicothe Correctional Institution ("CCI"), bring this action pursuant to 42 U.S.C. § 1983 alleging that defendants have deliberately exposed them to dangerously high levels of unabated asbestos in violation of the Eighth Amendment. This matter is before the Magistrate Judge on defendants' April 11, 2014 motion for summary judgment (doc. 185).

As a preliminary matter, plaintiffs' May 23, 2014 motion to strike defendants' reply in support of the motion for summary judgment (doc. 202) is DENIED and defendants' June 20, 2014 motion for leave to file a sur reply (doc. 205) is GRANTED. Defendants' reply brief was filed on May 20, 2014 at 12:14 a.m. I accept counsel's

1

representation that the delay in filing defendants' reply was related to technical difficulties.

## I.     Allegations in the Complaint

Plaintiffs William L. Ridenour and Tommy Lee Brown bring this action pursuant to 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments. The complaint alleges that plaintiffs have been exposed to dangerously high levels of unabated asbestos for more than thirteen years at the Chillicothe Correctional Institution ("CCI"). Compl. at ¶ 3. Defendants have knowingly required inmates to abate asbestos without proper training, containment and/or personal protective clothing, respirators, and other safety equipment or precautions thereby directly exposing plaintiffs to dangerously high levels of friable asbestos. *Id.* at ¶ 5. Defendants have failed to implement policies or procedures that would have prevented risks of serious damage to the present and future health of plaintiffs. *Id.* at ¶ 6. Plaintiff Ridenour has been diagnosed with chronic obstructive pulmonary disease ("COPD") and other pulmonary disorders symptomatic of asbestosis. A large unidentified mass was detected in chest x-rays of Ridenour. *Id.* at ¶ 11. Plaintiff Brown also suffers from COPD and other pulmonary problems symptomatic of asbestosis. *Id.* at ¶ 12.

The CCI has exposed and/or friable asbestos throughout the prison facilities, including plaintiffs' living and working areas, medical facilities and other areas. *Id.* at ¶ 56.  The asbestos at CCI is currently found in exposed pipe insulation, around inmate dormitory beds, in floor tiles, in window caulking and in the tunnels where inmates

work. *Id.* at ¶ 57. Defendants have known about the extensive asbestos contamination since at least the early 1980s. *Id.* at ¶ 58.  In 1992, defendants began abating asbestos. *Id.* at ¶ 60. Ridenour personally witnessed the abatement process in former B dormitory where the inmate abatement workers routinely left the abatement are a without decontaminating the coveralls. The CCI abatement supervisor assigned to supervise the inmate workers demonstrated a complete disregard for safety. *Id.* at ¶ 61. In 1995, CCI officials stated in *Raver v. Wilkinson* that all asbestos would be removed. *Id.* at ¶ 63.

In December 2006 independent laboratory tests confirmed the presence of asbestos in the CCI dormitories. *Id.* at ¶ 67.

### II.    Arguments of the Parties

#### A.    Defendants

Defendants argue that plaintiff Ridenour's claims are time barred. Ridenour filed his initial grievance or informal complaint on February 1, 2008 alleging that prison officials were deliberately indifferent to his health and safety because they have been aware of and ignored the risks posed by asbestos exposure at CCI for over twenty years. Ridenour exhausted his administrative remedies with the Chief Inspector's Office on March 11, 2008. According to defendants, the statute of limitations expired on March 11, 2010, but Ridenour did not file his complaint until June 7, 2010, nearly three months after the limitations period had expired.

Defendants also argue that plaintiff Brown failed to exhaust his administrative remedies before filing this action. According to defendants, Brown did not complete the

grievance process until June 8, 2010. When Brown filed the complaint on June 7, 2010, he had not yet received the Chief Inspector's decision, and, as a result, he had not exhausted his administrative remedies. Defendants argue that the Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to suit and that the statute is not satisfied where such remedies are exhausted during the pendency of the action.

In 1995, plaintiff Ridenour had a chest x-ray taken as a result of a positive Purified Protein Derivative ("PPD") or tuberculosis ("TB") skin test result. Given his positive PPD test, Ridenour was required to have an annual chest x-ray to discern whether he developed active TB. Dr. Naeem Aktar, Chief Medical Officer at CCI, stated in his declaration that there is no relationship between TB and asbestos exposure. Defendants maintain that annual chest x-rays taken from 1995 through August 2003 reveal granulomatous disease which is consistent with chronic obstructive pulmonary disorder ("COPD") and a benign non-calcified nodular density of the left lung. A February 19, 2013 examination of Ridenour at the OSU Medical Center was negative for shortness of breath. Ridenour had clear lung sounds and easy and even respirations. In his declaration, Dr. Aktar, who is Ridenour's treating physician, states that there is no relationship between COPD and friable asbestos exposure and that Ridenour does exhibit any signs or symptoms of asbestosis. Asbestosis is detected in chest x-rays with interstitial changes or pleural calcifications or plaques, none of which are in Ridenour's x-rays. Although Ridenour alleges that a large, unidentified mass was detected, this

4

mass is indicative of granuloma disease, not asbestosis. A granuloma is a small cluster or nodule of inflammation that can occur in any area of the body, including the lungs. If this inflammation leaves behind a scar, it is also called a granuloma. According to defendants, none of Ridenour's x-rays establish exposure to asbestos or friable asbestos or shore that he suffers from any pulmonary disorder associated with asbestos.

When plaintiff Brown arrived at CCI in October 1997, he informed medical staff that he had tested positive for TB since 1976. Because Brown presented with a positive PPD test, he received annual chest x-rays. In all of Brown's chest x-rays through August 23, 2010, his lungs were normal and clear. In his 2012 chest x-ray, the radiologist found that Brown's lungs were hyperinflated bilaterally with associated flattening of the diaphragms, which could evidence COPD. Following this x-ray, Brown underwent a pulmonary function test ("PFT") to rule out COPD. The PFT test revealed normal findings and indicated the absence of any significant pulmonary impairment and/or restrictive ventilator defect.

Defendants argue that plaintiffs fail to allege any factual basis demonstrating that the defendants were aware of or had actual knowledge of a risk of harm to plaintiffs through the abatement of asbestos at CCI. Defendants maintain that plaintiffs have failed to identify specific allegations directly against any of the named defendants. Plaintiffs simply assert that defendants, acting individually or collectively, have deliberately exposed plaintiffs to unreasonably high levels of unabated, exposed and/or friable asbestos for at least thirteen years. By lumping the defendants together, plaintiffs

5

have not met the Sixth Circuit's requirement that each defendant be evaluated individually to determine whether liability attaches. *See Bishop v. Hackel,* No. 09-1791, 2011 WL 291951 (6th Cir. Feb. 1, 2011). Defendants maintain that plaintiffs must demonstrate how each individual defendant is liable and how he or she failed to take reasonable measures to prevent ostensible exposure to asbestos.

According to defendants, plaintiffs cannot point to any evidence showing that the named defendants had knowledge of a risk to them that were not addressed by the Ohio Penal Institute ("OPI") during the abatement process at CCI. Contrary to plaintiffs' assertions, the 2011 Chryatech Inc. Qualified Statement and the January 26, 2007 Correctional Institution Inspection Committee ("CIIC") report state that asbestos at CCI was being addressed, contained and abated properly. Plaintiffs cannot show that defendants were aware of unspecified risks given these reports. Defendants maintain that it was reasonable for the defendant to rely on the instructions of the abatement licensing agency, OPI. The record does not contain any evidence that defendants were aware of any risk of harm to plaintiffs when they adhered to the instructions and/or advice of OPI.

Defendants further argue that they are entitled to qualified immunity. Even if the Court were to conclude that a constitutional right was violated there is no evidence that defendants could have reasonably foreseen injury to any inmate as long as the asbestos abatement guidelines were adhered to. Plaintiffs have offered no evidence that any of the named defendants acted deliberately in exposing them to a nonexistent risk.

6

###### B.    Plaintiffs Ridenour and Brown

Plaintiffs argue that they have both been diagnosed with COPD and other respiratory disorders symptomatic of asbestos-related diseases.

Chryatech, Inc. ("Chryatech") performs asbestos and lead paint surveys and services, which include abatement project design, abatement administration, on-site monitoring, and final clearance testing. Beginning December 6, 2010 through January 26, 2011, Chryatech performed an asbestos reassessment survey of its original 2006 survey performed at CCI. Chryatech surveyed forty-one buildings as part of the original survey and the reassessment. Twenty-eight of the buildings have asbestos containing materials. Chryatech stated that the overall condition or hazard rank of the materials remained relatively unchanged from its 2006 survey. Based on their hazard rank, the most dangerous buildings are the hospital/dormitory A-1, dormitory D-1, dormitory D-2, dormitory D-3, and the chapel.

On January 4, 2007, the Correctional Institution Inspection Committee ("CIIC"), a legislative committee that inspects Ohio prisons and evaluations operations, conditions, and programs, visited CCI. Defendants Leah Bob-Itt, Brian Wittrup, Drew Hildebrand, Steve Clever, Leta Pritchard, and Steve Brooks were present during the meeting. Brooks, the CCI Health and Safety Coordinator, stated that the last asbestos in a CCI housing unit was removed from D1 two years ago.

Ridenour has been incarcerated for over 41 years. He was transferred to CCI on May 14, 1985. On his arrival at CCI, he worked and resided in the hospital and

dispensary. Ridenour maintains that from May 1985 through October 1986, he witnessed visible asbestos dust in the air on a daily basis throughout the hospital. When Ridenour arrived in May 1985, his physical examination revealed he was in excellent physical condition. Ridenour contends that his lungs remained in excellent condition until 1995. In January 2000, Dr. McLemore, a doctor with Mid-Ohio Radiology Services, identified a nodular density in Ridenour's left lung, which he described as a fibrotic streak or possible a granuloma. A subsequent radiology report indicated that Ridenour's lungs were hyperinflated with vertical elongation consistent with COPD. A 2013 x-ray of Ridenour's lungs showed the continued presence of granuloma and the onset of emphysematous disease. An August 7, 2012 list of Ridenour's chronic care diseases included COPD and a notation of asbestos exposure. Ridenour maintains that he was first diagnosed with asbestosis symptoms, which included chest pain, cough with little or no expectoration, dyspnea, fatigue after slight exertion, shortness of breath, and poor functional capacity.  In 2005, Ridenour witnessed the asbestos abatement process in the E-1 housing unit because the inmates were not moved away from the abatement activities. He maintains that the workers failed to follow decontamination and other asbestos containment protocols. Ridenour saw significant amounts of longstanding, unabated, exposed and damaged asbestos in the sleeping areas, the dormitory, laundry facilities, hallways, television areas, and other locations. In January 2000, Ridenour witnessed a steam pipe break, which scattered asbestos dust throughout

the area. Ridenour maintains that no precautions were taken in cleaning up the asbestos debris.

Plaintiff Tommy Lee Brown has been incarcerated at CCI for over fifteen years. While housed in D1, Brown witnessed significant amounts of long-standing, unabated, exposed and damaged insulation on steam pipes in the sleeping areas, hallways, showers, and television areas.  Brown witnessed maintenance workers removing windows, a door with caulking, and floor tiles containing asbestos without taking necessary precautions.

When Brown arrived at CCI, x-rays revealed that his lungs were well expanded and clear. In 2010, Brown began to complain about shortness of breath to medical staff. A June 2012 x-ray revealed that Brown's lungs were hyperinflated with associated flattening of the diaphragms consistent with COPD. On July 6, 2012, Brown was referred to the Chronic Care Clinic for respiratory problems. Brown regularly visited the Dispensary, which was given a hazardous rank of 7.

Plaintiffs argue that asbestos fibers that have been inhaled remain in the lungs for years and eventually cause excessive scarring and fibrosis, resulting in a stiffening of the lungs that continues long after exposure ceases. With advanced asbestosis, individuals have a dry cough and increased cardiac effort is needed to expand the lungs, which may induce secondary heart disease. Plaintiffs maintain that asbestosis is difficult to detect because chest x-rays reveal little until the disease is advanced. Asbestosis can result from relatively low exposure.

With respect to defendant Steven Brooks, plaintiffs contend that as the Health and Safety Coordinator, Brooks said he became aware of the presence of asbestos during the *Smith v. ODRC* litigation. Plaintiffs argue, however, that on January 4, 2007, Brooks told the Correctional Institution Inspection Committee that the last asbestos in a CCI housing unit was removed from D1 two years ago. Based on this statement, plaintiffs argue that they have established that Brooks knew about dangerously high levels of asbestos in the D1 housing unit in 2005 and that the asbestos was so dangerous that it had to be removed. Plaintiffs further argue that the statement shows that Brooks was aware of the risk of exposure in 2005, which is inconsistent with his statement that he did not learn about the presence of asbestos until the *Smith* case was filed in 2008. Brooks stated that asbestos protective measures were taken in accordance with ODRC abatement policies and procedures, yet counsel for defendants asserts that there are no abatement policies for ODRC. Plaintiffs further argues that the statement Brooks made to the CIIC in January 2007 was intentionally false in an effort to conceal the presence of asbestos in the CCI housing units.

Plaintiffs maintain that defendant Brian Wittrup, as the Deputy Warden of Operations, was responsible for planning and administration of all direct operational services including security, recreation, maintenance and support services. Wittrup attended the January 4, 2007 CIIC meeting and reviewed the 2006 Chryatech report. Plaintiffs argue that the privilege log of defendant Knab contains thirty separate emails concerning asbestos that Wittrup either received or forwarded.

Plaintiffs argue that defendant Robin Knab, as Warden from November 25, 2007 to November 6, 2011, had oversight of all facility operations, including safety, security, institutional environment and health care services. Knab knew of the health risks posed by asbestos at CCI from a May 2007 email from Chryatech. The 2007 Chryatech report was attached to the email. Plaintiffs argue that as a result, Knab knew of the serious risk of exposure to asbestos dust at CCI and refused to remedy the situation. Knab stated that she was not aware of any prior lawsuits, grievances, and/or investigations or related communications. But, in fact, on January 11, 2011, Knab received an email pertaining to a union grievance and settlement concerning asbestos abatement and containment areas. Plaintiffs maintain that Knab received dozens of asbestos related documents from 2007 to 2011.

According to plaintiffs, defendant Daylyn Burton was employed at CCI from February 22, 2004 to March 29, 2013 as a Building Maintenance Supervisor. His duties included operating the maintenance department and supervising repair and construction work. Plaintiffs maintain that Burton received several documents related to asbestos at CCI. Although he states that protective measures were taken in accordance with ODRC abatement procedures and policies, counsel for defendants states that there are no ODRC abatement policies. Burton received emails and documents from Knab relating to asbestos at CCI.

Defendant F. Drew Hildebrand was responsible for supervising staff in the medical, religious, mental health, recover and education areas and served as a liaison

11

between staff and the warden. Hildebrand because aware of the presence of asbestos at CCI in 2004, when he began his employment. Although Hildebrand contends that inmates were removed from any area alleged to contain asbestos prior to abatement, plaintiffs alleged that they resided and worked in those areas containing significantly damages asbestos.

Defendant Leah Bobb-Itt served as Deputy Warden of Special Services and her duties included directing and coordinating special programs services such as medical, mental health and religion at CCI. When she arrived at CCI, asbestos abatement was underway. Bobb-Itt was present at the January 2007 CIIC meeting and served as acting warden.

Defendant Kenny Black worked at CCI from 2000 to 2007. Because Black failed to properly respond to requests for interrogatories and for admissions, plaintiffs states that they cannot meet their burden without Black's privilege log to show when Black first knew plaintiffs faced a substantial risk of serious harm and disregarded such risk by failing to reasonable measures to abate it.

Defendant Timothy Brunsman served as Chief Managing Officer of CCI and provided executive oversight to all facility operations including safety, security, institution environment, health care services, external awareness and public relations, financial management, and human capital management. Although Brunsman was not at the January 2007 CIIC meeting, he called during the meeting and was updated on the proceedings.

12

According to plaintiffs, defendant Steve Clever was aware of the asbestos at CCI since the start of his employment. For approximately 30 years, Clever knew about the serious risk of exposure to friable asbestos and did nothing to abate the risk of exposure.

Plaintiffs further argue that they cannot meet their burden without the privilege logs. Plaintiffs maintain that the log is necessary to establish when defendants knew plaintiffs faced a substantial risk of serious harm.

Ridenour argues that his claim is timely because the private settlement agreement in *Smith v. ODRC* tolled the statute of limitations for individual claims for personal injuries or other types of money damages. The *Smith* case was decided on April 26, 2012, and the statute of limitations for plaintiffs' claim did not expire until April 26, 2014.

Plaintiffs argues that in a toxic exposure claim, an inmate must demonstrate that he suffered an actual serious injury to his present health or faced a substantial risk of serious harm to his future health from involuntary exposure to the toxin. Plaintiffs argues that defendants colluded with one another to hide the risk of asbestos exposure from the CIIC and intentionally deceived the CIIC inspectors by stating that there was no asbestos in the inmate living areas. This conduct demonstrates an intent to hide the presence of dangerously high levels of asbestos at CCI.

Plaintiff Brown maintains that he exhausted his administrative remedies on June 6, 2010. Brown's appeal to the Chief Inspector was submitted on May 6, 2010, and pursuant to Ohio Administrative Code 5120-9-31, the Chief Inspector was required to respond to grievance appeals within 30 days or submit a request to the inmate for an

extension of time to respond. Brown maintains that under the waiver doctrine, the exhaustion requirement was satisfied.

### III. Plaintiffs' Motion in Limine to Exclude the Declaration of Dr. Akhtar

Plaintiffs seek an ordering excluding the declaration of Dr. Naeem Akhtar because he is not a qualified expert in the field of pulmonology and his declaration does not comply with Rule 702 of the Federal Rules of Evidence. Plaintiffs argues that Dr. Akhtar does not state how long he has been a doctor or whether he has any speciality training. He does not state where he received his training as a doctor. Plaintiffs maintain that as a subcontractor for ODRC, Dr. Akhtar's apparent duties are to reduce costs of medical care by eliminating medications and treatments ordered by other CCI doctors. The x-ray evidence upon which Dr. Akhtar relies is insufficient data from which to form a reliable opinion about asbestos-related diseases. Plaintiffs further argue that Dr. Akhtar does not explain what methodology he used to arrive at his conclusion or whether such methodology is one that is generally used by other experts in his field. Plaintiff's argue that because defendants have failed to show that Akhtar is qualified as an expert and that he will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues, his declaration should be excluded. According to plaintiffs, a treating provider's testimony is subject to the reliability requirements set forth in *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 ( 1993). Plaintiffs argue that Dr. Akhar's declaration is based on his subjective belief rather than a reliable test for determining asbestos exposure such as the fiber burden analysis. Plaintiffs

14

contend that the fiber burden analysis is the most reliable test for determining whether a disease is has been caused by asbestos because there are objective biomarkers of asbestos-related exposure that show up on the lungs, including asbestosis, bilateral pleural plaques and pleural thickening.

In response, defendants argue that as one of plaintiffs' treating physicians, Dr. Akhtar only provided factual information as to the contents of plaintiffs' medical records, the results of objective laboratory and radiological testing, and plaintiffs' medical diagnoses. Defendants argue that a treating physician is permitted to offer testimony regarding symptoms, tests, diagnoses and treatment. Defendants also maintain that plaintiffs have no justification to seek exclusion of Dr. Akhtar's description of the signs and symptoms of asbestosis because it matches their own description.

<u>Discussion</u>.

Generally a treating physician can provide expert testimony regarding a patient's illness, the appropriate diagnosis, and the cause of the illness even if the physician is not among the world's foremost authorities on the matters. *See Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir.2009); *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir.2007). However, a treating physician's testimony is still subject to the requirements in *Daubert*. Before permitting a physician to testify, the district court must be persuaded that (1) the reasoning or methodology underlying his or her testimony is scientifically valid; and (2) he or she has properly applied that reasoning or methodology to the facts at issue to aid the trier of fact. *See Gass*, 558 F.3d at 426; *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529–30 ("The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation.").

*Thomas v. Novartis Pharmaceuticals Corp.*, 443 Fed. Appx. 58, at *61, 2011 WL 3701816, 2 (6th Cir. Aug. 23, 2011).

In his declaration, Dr. Akhtar states that he is a licensed medical doctor and is employed as the Chief Medical Officer at CCI. Dr. Akhtar performs routine and emergency medical care to patients in response to a  referral from the Chronic Care Clinic. He also evaluates inmates for referral consultations, consults with specialists and evaluates their recommendations, and reviews the results of laboratory, x-ray and other diagnostic testing. Dr. Akhtar also reviews medical occurrences and identifies problems requiring medical corrective action plans. Dr. Akhtar states that despite plaintiffs' claims that they suffer from asbestos-related pulmonary conditions, neither of plaintiffs' medical records or physical condition supports their claims. Both plaintiffs test positive on the PPD skin test, but they do not have active TB. TB is not the result of exposure to friable asbestos. Dr. Akhtar states that neither of the plaintiffs present with any signs or symptoms of asbestosis, lung cancer or mesothelioma. He further states that neither Ridenour nor Brown's pulmonary testing or chest x-rays suggest an asbestos-related disease process. Dr. Akhtar further states:

> 12. According to Ridenour's October 12, 2010 and August 28, 2013 chest x-rays, he has a "non-calcified nodular density in the left mid lung" which has been "unchanged since 1995" (See the October 12, 2010 chest x-ray attached to defendants' motion for summary judgment). This density was described as "calcified granulomatous disease" in the August 28, 2003 chest x-ray as attached to defendants' motion.

13.     A granuloma is not indicative of asbestos related diseases. Rather a granuloma, whether calcified or not, is a small cluster or nodule of inflammation that can occur in any area of the body, including the lungs. If this inflammation leaves behind a scar, the scar tissue is also referred to as a granuloma. A primary cause of the inflammation is infection, which fungal infections are a common cause.

Doc. 185-10 at PageID# 2537 at ¶¶ 12 & 13.

Plaintiffs' motion is DENIED. Dr. Akhtar has not offered any conclusions or opinions pertaining to causation. He has provided factual information concerning plaintiffs' medical records. Dr. Akhar's declaration is limited to testimony regarding plaintiffs' symptoms, tests, diagnoses and treatment. Plaintiffs describe the signs and symptoms of asbestosis as interstitial changes in the lungs, and Dr. Akhar notes the absence of these symptoms in the medical record.

## IV.    Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine

dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

18

## V.    Discussion

Statute of Limitations. On February 1, 2008, plaintiff Ridenour filed his informal complaint alleging that defendants have been deliberately indifferent to his health and safety by exposing him to asbestos and ignoring the risk to his health. On February 6, 2008, Ridenour filed a notification of grievance. Doc. 185-4. On March 11, 2008, Ridenour exhausted his administrative remedies with the Chief Inspector's Office. Doc. 185-5. As a result, the statute of limitations for Ridenour's Section 1983 action expired as of March 11, 2010. Ridenour, however, did not file his complaint until June 7, 2010.

Ridenour contends that the statute of limitations was tolled based on a ruling in *Smith v. ODRC*, Case no. 2:08-cv-00015. The Private Settlement Agreement states:

> All individuals named as plaintiffs in this case, members of the putative class as it existed at the time of the filing of the Amended complaint in this litigation on November 11, 2008, and the actual settlement class members as defined in Section 3 of this agreement may pursue individual claims for personal injuries or other types of money damages relating to alleged exposure to asbestos, in violation of the Eighth Amendment, and may file their own claims. The defendants and the State of Ohio do not waive any defenses by acknowledging that individual actions may be filed, nor do they waive any defense or bar to bringing such a suit. The State of Ohio, the Ohio Attorney General, the Ohio Department of Rehabilitation and Correction, and all defendants in this action agree that the statute of limitations has been tolled until the date this action is dismissed. All parties agree that the law of Ohio shall determine when the statute of limitations expires thereafter.

Case no. 2:08-cv-00015 Doc. 170-1 at PageID# 617. Defendants argue that the statute of limitations had expired when plaintiffs filed their action and that nothing in the settlement agreement made the tolling of the statute of limitation apply retroactively.

19

But plaintiffs were members of the putative class at the time the amended complaint in the *Smith* case was filed, and nothing in the language of the settlement agreement excludes their claims from the tolling of the statute of limitations.

 <u>Exhaustion of Administrative Remedies</u>. The Prison Litigation Reform Act of 1995 prohibits an inmate from bringing suit until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

 Brown maintains that he fully exhausted his administrative remedies prior to filing suit. According to Brown, the Chief Inspector's response to his grievance was due on June 6, 2010. Brown argue that because he did not received the Chief Inspector's response on June 6, 2010 and the Chief Inspector did not request an extension of time to respond, his complaint was properly filed on June 7, 2010.

 This action was filed on June 1, 2010, and Brown filed his motion for leave to proceed *in forma pauperis* on June 3, 2010. On June 7, 2010, plaintiffs' motions for leave to proceed *in forma pauperis* were granted and the complaint was filed. For purposes of considering whether Brown had exhausted his administrative remedies, this case was brought on June 1, 2010. *See Ford v. Johnson*, 362 F.3d 395 (7th Cir. 2004)(holding that a prisoner "brought suit" when he mailed complaint to court in § 1983 action, for purposes of determining whether prisoner had exhausted administrative remedies before he

brought suit, as required under Prison Litigation Reform Act (PLRA), even though complaint was not filed until it had been reviewed by district court, and filing fee was paid, or prisoner was permitted to proceed *in forma pauperis*). As a result, Brown failed to exhaust his administrative remedies prior to this suit. Because I am not the final decision maker, I will consider the merits of Brown's claims despite my conclusion that he did not exhaust his administrative remedies.

Eighth Amendment. A prisoner may state a cause of action under the Eighth Amendment for involuntary exposure to asbestos which results in a present injury or an unreasonable risk of serious damage to his future health. *See Saaty* v. Morris, 82 F.3d 418, 1996 WL 160803, at *1 (6th Cir. April 4, 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *Patton v. Bechtler*, 9 F.3d 109, 1993 WL 428683, at *3 (6th Cir. Oct. 21, 1993) (unpublished) (citing *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993)). The test for determining whether a prisoner's Eighth Amendment rights have been violated contains an objective and a subjective component. To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1970). To demonstrate that the risk of harm is sufficiently serious, the inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the

inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id*. at 837.

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id.* at 842. A prison official who was not aware of a substantial risk of harm to an inmate may not be found liable even if the risk was obvious and a reasonable prison official would have noticed it. *Id.* 841-42. Furthermore, the Court must evaluate the liability of each defendant individually.

> Because, however, prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.

*Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Here, plaintiffs have failed to show they presently suffer from an asbestos-related injury. Ridenour has not come forward with any evidence showing he suffers from an asbestos-related illness. Ridenour contends that a large mass was depicted on his chest x-ray. Chest x-rays of Ridenour in April 1995, February 1997, and May 1998 were unremarkable. Doc. 185-13 at PageID# 2541-43. A November 16, 1999 chest x-ray noted

"a possible 10 mm. nodular density projecting in the left mid lung." *Id.* at PageID# 2544. It did not appear to be calcified. When compared to the February 1997 chest x-ray, it appeared unchanged, and it was believed to be benign. A follow-up x-ray was recommended. *Id.* On January 6, 2000, a follow-up x-ray was performed. *Id.* at PageID# 2545. The nodular density was possibly a fibrotic streak or a granuloma. It was completely unchanged from the 1997 study. *Id.* A January 9, 2001 chest x-ray was compared to Ridenour's previous exams. The nodular density measure 10-11 mm and was stable when compared to the 1997 study. *Id.* at PageID# 2546. On November 15, 2001, a chest x-ray revealed that the nodular density remained stable. *Id.* at PageID# 2547. Chest x-rays taken on June 30, 2003, February 6, 2004, July 28, 2004, and February 15, 2005 showed that the nodule had remained stable. *Id.* at PageID# 2548-52. An April 8, 2008 chest x-ray indicated that the granuloma was calcified, *Id.* at PageID# 2553; but a October 12, 2010 described a noncalcified nodular density as being unchanged since 1995. *Id.* at PageID# 2554. An August 28, 2013 chest x-ray noted calcified granulomatous disease and chronic emphysematous disease. There were no acute abnormalities. *Id.* at 2555.

Brown has also failed to demonstrate that he suffers from any asbestos-related disease. *See* doc. 185-17. Chest x-rays from July 31, 1997 through August 23, 2010 were unremarkable. *Id.* at PageID# 2562-72. A June 2012 chest x-ray indicated that Brown had chronic obstructive pulmonary disorder. *Id.* at PageID# 2561.

23

Plaintiffs have also failed to demonstrate that any individual defendant knew of and disregarded an excessive risk to plaintiffs' health or safety. Here, plaintiffs rely on the fact that defendants were aware of the presence of asbestos at CCI. When undisturbed, asbestos does not pose a danger to health and safety. Plaintiffs maintain that when asbestos was abated, inmate workers failed to safely remove asbestos subjecting plaintiffs to dangerous friable asbestos. To show that defendants had knowledge of the risk posed by friable asbestos, plaintiffs simply rely on their respective responsibilities and duties at CCI to demonstrate that defendants subjectively ignored the risk to plaintiffs. This is not enough. Plaintiffs have not come forth with any evidence demonstrating that defendants had personal knowledge of the manner in which asbestos abatement occurred at CCI. Plaintiffs do not rely on complaints made when the abatement was actually occurring that could be used to show that defendants had knowledge of improper abatement procedures. Plaintiffs also do not allege that the defendants themselves were engaged in the abatement process or that they were present and observed dangerous conditions posing a risk to plaintiffs. Because plaintiffs have failed to identify specific allegations directly against any of the named defendants, defendants motion for summary judgment should be granted.

## VI.    Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendants' April 11, 2014 motion for summary judgment (doc. 185) be GRANTED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel
United States Magistrate Judge